```
 1                  UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF OHIO
 2                       WESTERN DIVISION

 3    UNITED STATES OF AMERICA,     )  Docket No. 3:12CR495

 4             Plaintiffs,          )  Toledo, Ohio

 5             v.                   )  December 19, 2012

 6    RANDOLPH LINN,                )  Guilty Plea Hearing

 7             Defendants.          )

 8    -----------------------------

 9              TRANSCRIPT OF GUILTY PLEA HEARING
               BEFORE THE HONORABLE JACK ZOUHARY
10                UNITED STATES DISTRICT JUDGE

11    APPEARANCES:

12    For the Plaintiffs:   United States Attorneys' Office
                            By:  Ava Dustin
13                          Four SeaGate, Suite 308
                            Toledo, Ohio 43604
14                          (419) 259-6376

15

16    For the Defendant:    Andrew P. Hart
                            Office of the Federal Public Defender
17                          617 Adams Street
                            Toledo, Ohio 43604
18                          (419) 259-7370

19    Court Reporter:       Angela D. Nixon, RPR, CRR
                            1716 Spielbusch Avenue
20                          Toledo, Ohio 43624
                            (419) 260-5259
21

22

23    Proceedings recorded by mechanical stenography, transcript

24    produced by notereading.

25
```

1          THE COURT:  Please be seated everyone.  We're

2    here on case number 12CR495, United States versus Randolph

3    Linn.  The defendant is present in court along with his

4    counsel Andy Hart.  On behalf of the government we have

5    assistant U.S. attorneys Ava Dustin, Brigette Brennan and

6    Gwen Howe-Gebers.

7          Before I start, let me remind those in the

8    gallery to please conduct yourselves appropriately for the

9    courtroom setting, number one.  And number two, to avoid

10   potential embarrassment, please make sure your cell phones

11   are turned off.  Thank you.

12         This matter is here today for a hearing which

13   will be in two phases, Mr. Linn.  The first phase will be a

14   discussion of a superseding indictment which was filed on

15   December 18.  And the second phase will be a discussion of

16   a binding plea agreement.

17         By way of background, the original complaint in

18   this case was filed on October 5th, an original indictment

19   was filed on October 17, and an arraignment was held on

20   October 18.  We have in the original indictment two counts

21   that were charged against you, and in the superceding

22   indictment three counts.  A third count was added and we'll

23   discuss all of that during the course of this hearing.

24         It's my understanding, Mr. Linn, that it's your

25   intention today to respond to the superseding indictment as

1    well as to this binding plea agreement, a copy of which I

2    was presented with earlier this week.  We're going to

3    discuss those points during the course of this hearing, and

4    I'm going to give you a little outline of what we're going

5    to talk about.  First we're going to discuss the

6    superceding indictment and make sure that you have read it

7    and understood it.  And then we're going to talk about the

8    binding plea agreement and make sure that you have read it

9    and understood it.

10          Before I can discuss these matters with you,

11   however, I must determine the following points, first,

12   we're going to have a conversation, you and I, and some

13   questions and answers, the purpose of which will be to

14   determine whether you are competent this afternoon to

15   respond to the charges in this case.  Second, I want to

16   make sure you understand your trial rights which will be

17   waived if I accept a guilty plea from you.  Third, I want

18   to make sure you fully understand the nature of the charges

19   against you.  And fourth and finally, determine that your

20   plea in this case is, in fact, voluntary.

21          At any time during this hearing, Mr. Linn, you

22   may consult in private with your lawyer, simply tell me

23   that is what you wish and you will have that opportunity.

24   In a moment I'm going to ask you to stand and you will be

25   placed under oath.  The purpose of which is to ask you some

1    questions.  Once you are placed under oath, any false

2    statements by you can subject you to prosecution for

3    perjury.  Giving truthful answers to some of my questions

4    may incriminate you and necessarily result in you waiving

5    your Constitutional right not to testify against yourself

6    and this is so because, as part of your decision to plead

7    guilty, you will be required to admit your guilt.

8            Do you understand everything I've discussed with

9    you so far?

10           THE DEFENDANT:  Yes, sir.

11           THE COURT:  Thank you.  Please stand, raise your

12   right hand and our deputy clerk will swear you in.

13                     RANDOLPH LINN,

14   was herein, called as if upon examination, was first duly

15   sworn, as hereinafter certified, and said as follows:

16           THE DEFENDANT:  I do.

17           THE COURT:  You can stay right where you are.

18   You don't have to take the witness stand.  Be comfortable.

19   All I ask is that you make sure you talk into the

20   microphone, and sometimes you need to get close to it for

21   it to work best.

22           Your name for the record, please?

23           THE DEFENDANT:  Randolph Thomas Linn.

24           THE COURT:  And Mr. Linn, have you had any other

25   names or nicknames or aliases?

1              THE DEFENDANT:  Dumb ass is one of them, not

2    being facetious, that was one of them.  Randy another one.

3              THE COURT:  How old are you, sir?

4              THE DEFENDANT:  52.

5              THE COURT:  What year were you born?

6              THE DEFENDANT:  '59.

7              THE COURT:  And your last current address?

8              THE DEFENDANT:  6488 County Road 56, St. Joe,

9    Indiana.

10             THE COURT:  Anyone else live with you at that

11   address in St. Joe?

12             THE DEFENDANT:  I had an ex-wife and son.

13             THE COURT:  Was she your ex-wife then, or was she

14   your wife then?

15             THE DEFENDANT:  Wife then.

16             THE COURT:  Wife then.  And your son, how old is

17   he and his name?

18             THE DEFENDANT:  20, Colton.

19             THE COURT:  And what does Colton do?  Is he in

20   school, work, both?

21             THE DEFENDANT:  Works.

22             THE COURT:  Where does he work?

23             THE DEFENDANT:  Shambaugh & Sons, Fort Wayne.

24             THE COURT:  What kind of work does he do there?

25             THE DEFENDANT:  Puts sprinkler systems together.

```
1              THE COURT:  Did your wife work outside the home?
2              THE DEFENDANT:  Yeah, she works for Slattery Oil.
3    She's an attendant, take's people's money when they get gas
4    and stuff.
5              THE COURT:  How about you, did you work outside
6    the home?
7              THE DEFENDANT:  Yeah, I was a truck driver.
8              THE COURT:  For what company?
9              THE DEFENDANT:  Shambaugh & Son.
10             THE COURT:  Okay.  We're tripping over each a
11   little bit so I'm going to ask you to not race to an
12   answer.  Make sure I'm done with my question so our court
13   reporter can take it down accurately.
14             THE DEFENDANT:  Okay.
15             THE COURT:  And this company that you drove truck
16   for, what kind of business were they in, what did you haul?
17             THE DEFENDANT:  They built sprinkler systems,
18   kind of ironic.
19             THE COURT:  You have sprinkler systems in the
20   family.
21             THE DEFENDANT:  Yeah.
22             THE COURT:  How far did you go in school?  Tell
23   me about your education.
24             THE DEFENDANT:  Twelfth grade.
25             THE COURT:  What high school?
```

1                   THE DEFENDANT:  Leo High School.

2                   THE COURT:  Located.

3                   THE DEFENDANT:  Leo, Indiana.

4                   THE COURT:  Graduate?

5                   THE DEFENDANT:  Yes.

6                   THE COURT:  What year was that?

7                   THE DEFENDANT:  '79.

8                   THE COURT:  And then what did you do?

9                   THE DEFENDANT:  Went in the Marine Corp.

10                  THE COURT:  How many years?  Where?  What?  Give

11      me a little detail.

12                  THE DEFENDANT:  Four years Camp Pendleton, went

13      to Okinawa, Philippians, Korea, Dino Garcia, Canada, a

14      little bit of everywhere.

15                  THE COURT:  What rank did you ultimately achieve?

16                  THE DEFENDANT:  Corporal.

17                  THE COURT:  Honorable discharge?

18                  THE DEFENDANT:  Yes, sir.

19                  THE COURT:  Then what did you do?

20                  THE DEFENDANT:  Worked for my dad, hung

21      wallpaper, ceramic tile and carpet.

22                  THE COURT:  Give me employment history generally

23      from then up to date.

24                  THE DEFENDANT:  I guess it would be about 1992 I

25      started driving semi over-the-road, been doing that ever

1  since.

2            THE COURT:  Are you able to read and write

3  English?

4            THE DEFENDANT:  Yes.

5            THE COURT:  How's your physical health?

6            THE DEFENDANT:  I guess all right.

7            THE COURT:  Are you currently under the care of a

8  doctor or a physician or other practitioner for any kind of

9  physical or mental issues?

10            THE DEFENDANT:  No, sir.

11            THE COURT:  Have you ever been under the care of

12  a doctor or hospital for a mental condition?

13            THE DEFENDANT:  No, sir.

14            THE COURT:  Have you taken any drugs, alcohol or

15  medication in the last several weeks?

16            THE DEFENDANT:  Drugs.

17            THE COURT:  What kind of drugs?

18            THE DEFENDANT:  It's what they gave me here at

19  the jail.

20            THE COURT:  What did they give you at the jail?

21            THE DEFENDANT:  Heart medication, cholesterol.

22            THE COURT:  Are these regular prescription drugs

23  that you've taken in the past?

24            THE DEFENDANT:  Yes, sir.

25            THE COURT:  Any adverse side effects from these

1   medications?

2           THE DEFENDANT:  I didn't think so.  My wife

3   sometimes seemed to think she could tell when I wasn't

4   taking them.

5           THE COURT:  During the last several weeks, and in

6   particular today, have you had any troubles thinking

7   mentally?

8           THE DEFENDANT:  No.

9           THE COURT:  Is your mind clear this afternoon?

10          THE DEFENDANT:  Yes.

11          THE COURT:  You know why you're here?

12          THE DEFENDANT:  Yes, of course.

13          THE COURT:  Well, of course.  Tell me in your own

14  words why you're here today.

15          THE DEFENDANT:  That's all I've been thinking

16  about every since I've been picked up, since it happened.

17          THE COURT:  You know the purpose of today's

18  hearing?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  What is the purpose of today's

21  hearing?

22          THE DEFENDANT:  For burning the church.

23          THE COURT:  And the purpose of today's hearing is

24  for you to respond to that act.  You understand that?

25          THE DEFENDANT:  Yes, I'm guilty.

1           THE COURT:  You understand this is an important

2  hearing?

3           THE DEFENDANT:  Yes, sir, I do.

4           THE COURT:  Okay.  Mr. Hart, have you had any

5  difficulty communicating with the defendant?

6           MR. HART:  No, Your Honor.

7           THE COURT:  Have you discussed this case

8  thoroughly with him?

9           MR. HART:  Yes, Your Honor.

10          THE COURT:  Do you believe he understands the

11  purpose and nature of this hearing today?

12          MR. HART:  I do.

13          THE COURT:  Do you have any doubts as to his

14  competency?

15          MR. HART:  I don't, Your Honor.

16          THE COURT:  Same question for Ms. Dustin.  Do you

17  have any doubts as to this defendant's competency?

18          MS. DUSTIN:  No, Your Honor.

19          THE COURT:  Mr. Linn, based upon your answers to

20  my questions, your courtroom demeanor and the

21  representations of counsel, I find that you are competent

22  for purposes of today's hearing.

23          The next question I have for you has to do with

24  your lawyer.  Have you had enough time and opportunity to

25  talk to your lawyer about this case?

1              THE DEFENDANT:  Yes, sir, he's been a lot of

2    help.

3              THE COURT:  Good.  Have you told your lawyer

4    everything you know about this case?

5              THE DEFENDANT:  Yes, I have, and he's -- helped

6    me out, telling me what to do.

7              THE COURT:  Are you satisfied with --

8              THE DEFENDANT:  Yes, I couldn't have gotten a

9    better guy to represent me.

10             THE COURT:  I'm going to finish my question.  Are

11   you satisfied with his advice and his competence and his

12   efforts on your behalf?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  And have you discussed with him all

15   possible defenses to the charges against you?

16             THE DEFENDANT:  Yes, I have.

17             THE COURT:  Are you satisfied then, I take it you

18   are but let's confirm, are you satisfied with your legal

19   assistance?

20             THE DEFENDANT:  I'm not really satisfied with it

21   but I don't have much of a choice, do I?

22             THE COURT:  Yes, you have a choice.

23             THE DEFENDANT:  I wish this whole thing never

24   happened.  You know what I mean?

25             THE COURT:  I understand that.  I want to make

    1    sure you and I are on the same page.  My question is an

    2    important one, and if you are unhappy for some reason with

    3    your lawyer --

    4              THE DEFENDANT:  Oh, no, I'm not.  No.  No.

    5              THE COURT:  If you are unsatisfied for some

    6    reason with your lawyer --

    7              THE DEFENDANT:  No, sir.

    8              THE COURT:  Okay.  I remind you that you may stop

    9    at any time during this hearing and consult with him in

   10    private if you wish, okay?

   11              THE DEFENDANT:  Uh-huh.

   12              THE COURT:  That's a yes?

   13              THE DEFENDANT:  Yes.  Yes, sir.

   14              THE COURT:  Let's turn then, and Mr. Hart,

   15    hopefully you have a copy in front of you to the

   16    superseding indictment which was filed on December 18 of

   17    this year.  It is three pages and consists of three

   18    separate counts.  Have you read this document?

   19              THE DEFENDANT:  Yes, sir, I have.

   20              THE COURT:  And you have reviewed it with your

   21    lawyer and discussed it with your lawyer?

   22              THE DEFENDANT:  Yes, sir.

   23              THE COURT:  And counsel, do you waive any formal

   24    reading and any defects?

   25              MR. HART:  Yes, Your Honor.

1          THE COURT:  There are several sections to this

2     superseding indictment.  The first section is general

3     allegations followed by the three counts.  Ms. Dustin,

4     perhaps I can ask you to do just a very brief summary of

5     the superseding indictment.

6          MS. DUSTIN:  Certainly, Your Honor.  The

7     defendant is charged in count one of the indictment with

8     damage to religious property in violation of Title 18,

9     United States Code Sections 247(a)(1) and (d)(3).  It

10    states that on or about September 30th, 2012 in the

11    Northern District of Ohio, Western Division, the defendant,

12    Randolph Linn, did intentionally deface, damage and destroy

13    any religious property because of the religious character

14    of that property, and attempted to do so, and that the

15    offense was in and affecting interstate and foreign

16    commerce.  To wit Randolph Linn drove a motor vehicle from

17    Indiana to the Islamic Center in Perrysburg, Ohio.  And

18    after unlawfully entering the Islamic Center, while

19    carrying a firearm, used gasoline to set a fire in the

20    center of the Islamic Center's prayer room.

21          If convicted of that count, the defendant faces

22    up to 20 years imprisonment, a fine of $250,000, up to

23    three years of supervised release and a $100 special

24    assessment.

25          Count 2 of the indictment charges the defendant

1    with use of fire or explosives to commit a felony.  And

2    under that count the previous allegations set forth in the

3    general allegations and the count one are incorporated by

4    reference and in specifically in this count the defendant's

5    charged on or about September 30th, 2012 with knowingly and

6    willfully using fire to commit an offense prosecutable as a

7    felony in a court of the United States.  To wit, the felony

8    of damage to religious property in violation of Title 18

9    United States Code Sections 247(a)(1) and 247(d)(3), which

10   is charged in count one of this superseding indictment.

11   And that also occurred in the Northern District of Ohio,

12   Western Division.  If convicted of count 2 of the

13   indictment -- superseding indictment, the defendant faces a

14   mandatory ten years imprisonment which must be served

15   consecutive to the sentence of imprisonment in count one,

16   and a fine of $250,000, up to three years of supervised

17   release and a special assessment of one -- of $100.

18           Count 3 of the superseding indictment charges the

19   defendant with violating Title 18, United States Code

20   Section 924(c), carrying a firearm in connection with a

21   crime of violence.  It also incorporates paragraphs one and

22   two of the general allegations and sets forth that on or

23   about September 30th of 2012 in the Northern District of

24   Ohio, Western Division, the defendant, Randolph Linn, did

25   knowingly use and carry a firearm during and in relation to

1    the commission of a crime of violence for which he may be

2    prosecuted in a court of the United States.  That is the

3    felony of use of fire or explosives to commit felony in

4    violation of Title 18, United States Code Section 844(h)(1)

5    which is charged in Count 2 of the superseding indictment.

6    If convicted of Count 3 the defendant faces a mandatory

7    five years imprisonment which must be consecutive to the

8    sentence of imprisonment in Count 2, a statutory fine of

9    $250,000, up to three years of supervised release and a

10   $100 special assessment.

11          THE COURT:  Mr. Hart, did you have an opportunity

12   to -- well, first let me ask you, do you agree with the

13   summary by the assistant U.S. attorney?

14          MR. HART:  Yes, Your Honor.

15          THE COURT:  And have you had an opportunity to

16   discuss this superseding indictment in full with your

17   client?

18          MR. HART:  Yes, Your Honor.  We discussed it this

19   morning.

20          THE COURT:  This morning?

21          MR. HART:  Well, it was returned yesterday or the

22   day before, so.

23          THE COURT:  And tell me, have you had a number of

24   other discussions prior to yesterday and today with your

25   client?

```
 1                 MR. HART:  Yes, Your Honor.

 2                 THE COURT:  Give me a ballpark estimate of how

 3      often.

 4                 MR. HART:  Your Honor, we've met regularly since

 5      this matter was originally brought before The Court.

 6                 THE COURT:  Thank you.  Mr. Linn, what you just

 7      heard was a summary of the charges in this case against

 8      you, along with potential penalties.  And that would

 9      include both financial penalties as well as prison time.

10      And your lawyer's indicated that he has had an opportunity

11      to discuss all these matters with you in full; is that

12      correct?

13                 THE DEFENDANT:  Yes, sir.

14                 THE COURT:  And you understand these charges and

15      potential penalties that you face?

16                 THE DEFENDANT:  Yes, sir.

17                 THE COURT:  In lieu of taking a plea at this

18      point, given that we're going to be turning to the binding

19      plea agreement next, that's what I'm going to do next is

20      I'm going to turn to the binding plea agreement, and

21      discuss with you next, Mr. Linn, the terms of that plea

22      agreement.  However, before I get to that I want to review,

23      as I indicated at the outset I would, your trial rights

24      with you.  Because your trial rights are impacted should

25      you choose to plead guilty to the superseding indictment.
```

 1   And I want to review those rights with you on the record so

 2   that I'm satisfied that you understand those rights.

 3              Under the Constitution of the United States you

 4   have the right to a trial, either to a court or to a jury.

 5   And at that trial, Mr. Linn, you would have the right to

 6   confront and cross examine witnesses the government might

 7   bring to testify against you, and you have your own process

 8   for obtaining witnesses to testify on your behalf.  And the

 9   government would be required to prove your guilt beyond a

10   reasonable doubt, and you could not be compelled to testify

11   against yourself.

12              I want to make sure you understand that if you

13   choose to enter a guilty plea this afternoon, you are

14   giving up your right not only to the trial but to all the

15   other rights I just listed.  You understand that?

16              THE DEFENDANT:  Yes, sir.

17              THE COURT:  And you also understand you have a

18   right to plead not guilty as you did earlier in this case,

19   and you have a right to maintain that plea of not guilty

20   even if you are, in fact, guilty.  You understand that?

21              THE DEFENDANT:  Yes, sir.

22              THE COURT:  And if you were to maintain a plea of

23   not guilty, you would have the right to a speedy trial, at

24   which time you would have the right to be represented by a

25   lawyer, and if you could not afford a lawyer, The Court

 1   would appoint a lawyer to represent you.  And at that trial

 2   you would be presumed innocent, and you would not have to

 3   prove that you are innocent, but, rather, the burden of

 4   proof in a criminal case remains on the government

 5   throughout the case.  You understand that as well?

 6             THE DEFENDANT:  Yes, sir.

 7             THE COURT:  If you had a trial you could not be

 8   forced to testify, and if you chose not to testify, no

 9   inference or suggestion of guilt could be made or drawn

10   from the fact that you did not testify.  That is an

11   important right you have as a defendant in a criminal case.

12   You understand that right?

13             THE DEFENDANT:  Yes, I do.

14             THE COURT:  If your trial was before a jury, a

15   large number of prospective jurors from Northwest Ohio

16   whose names are chosen at random would be called here to

17   this courthouse and would ultimately be composed of 12

18   persons, after you and your lawyer had an opportunity to

19   participate in the jury selection process.  During that

20   process, you can exclude jurors for cause, for bias or

21   other reasons of disqualification, and the jury would have

22   to agree unanimously on its verdict after it separately

23   considered each element of each count charged against you.

24   You understand everything I've told you so far?

25             THE DEFENDANT:  Yes, sir.

```
1              THE COURT:  If at that trial you were found
2    guilty, you would also then have a right to appeal your
3    conviction under certain circumstances.  And you also have
4    a right by statute to appeal your sentence under certain
5    circumstances.  However, in the binding plea agreement, a
6    copy of which I have recently reviewed, there includes a
7    section which limits your appeal rights.  Are you willing
8    to comply under this agreement, with this waiver of your
9    appeal rights?
10             THE DEFENDANT:  Yes, sir.
11             THE COURT:  In short verse, Mr. Linn, you
12   understand that if you choose to plead guilty here today,
13   your appeal rights will be much more limited than they
14   otherwise would be, you understand that?
15             THE DEFENDANT:  Yes, sir.  That's what I'm doing.
16             THE COURT:  You understand then if you plead
17   guilty, you're waiving all these rights?  If I accept a
18   guilty plea, there'll be no trial, I will enter a finding
19   of guilty, and then sentence you on the basis of your
20   guilty plea after we have considered a presentence report.
21   You understand that?
22             THE DEFENDANT:  Yes, sir.
23             THE COURT:  And you also understand that by
24   pleading guilty you may be deprived of valuable civil
25   rights, including the right to possess any kind of firearm.
```

```
1   Are you willing to give up these rights?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  You are a citizen of the United

4   States, am I correct?

5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  Next I want to go over with you the

7   binding plea agreement.  I see that a copy is in front of

8   you.  I'm going to go through this with you, Mr. Linn, page

9   by page.  Please follow along, and as always, if you have

10  any questions, please consult in private with your lawyer.

11  First, have you gone over this plea agreement prior to

12  today with your lawyer?

13           THE DEFENDANT:  Yes, sir.

14           THE COURT:  And are these your initials in the

15  lower right hand corner that I see on every page of this

16  agreement which, for the record, is 14 pages?

17           THE DEFENDANT:  Yes, sir.

18           THE COURT:  Let's walk through it together then.

19  On the first page there is a section called Waiver of

20  Constitutional trial rights.  I have discussed that with

21  you earlier in this hearing.  This is a summary of that

22  discussion.  Do you understand this provision of the

23  agreement?

24           THE DEFENDANT:  Yes, sir.

25           THE COURT:  The second section is captioned
```

1    Statutory Penalties.  And it lists the penalties that you

2    face for each of the three counts, and there is a box at

3    the bottom of page 2 which summarizes the description of

4    each offense, Counts 1 through 3, and also the sentences

5    that you face for each of those counts.  You understand

6    this as well?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  I need to highlight for you that the

9    Counts 2 and 3 are consecutive counts which means the

10   sentence for Count 2 is consecutive to Count 1, and the

11   sentence for Count 3 is consecutive to Count 2, which means

12   they're added together, that you do not get the benefit of

13   a concurrent sentence.  You understand that?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  Top of page three, and if at any time

16   either counsel believes that there is something else they

17   wish to highlight during my discussion, feel free to join

18   the discussion.  Page 3, paragraph three, minimum sentence

19   must include imprisonment.  And what this says is that a

20   term of imprisonment must be imposed for each of these

21   counts, and that, as we just discussed, there are

22   consecutive sentences between Counts 1 and 2, and Counts 2

23   and 3.  You understand that paragraph?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  Paragraph four, special assessment

1    requires that you pay $100 for each count of conviction,

2    that would be a total of $300 due immediately at

3    sentencing, you understand that?

4           THE DEFENDANT:  Yes, sir.

5           THE COURT:  Paragraph five talks about costs, and

6    that you may be ordered to pay costs in this case,

7    including imprisonment, community confinement, home

8    detention, probation, supervised release or other related

9    costs.  Do you understand that?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Paragraph six talks about

12    restitution.  And in that paragraph you acknowledge that

13    you owe restitution to the Islamic Center of Greater Toledo

14    as will be set forth in a later paragraph.  And that as

15    part of the sentencing order in this case, you will be

16    ordered to pay restitution to the Islamic Center.  Do you

17    understand that?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Paragraph seven talks about violation

20    of probation, supervised release.  And what it says in

21    short verse is that upon release from prison, if you are on

22    supervised release, and you violate that supervised

23    release, that can result in additional penalties imposed by

24    The Court, including additional time, imprisonment.  You

25    understand that?

1            THE DEFENDANT:  Yes, I do, sir.

2            THE COURT:  Paragraph eight at the top of page

3     four.  Paragraph eight indicates an agreement to plead

4     guilty and says, quote, defendant agrees to -- agrees to

5     plead guilty to the superseding indictment in this case,

6     end quote.  You understand and agree with that paragraph?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  Paragraph nine, agreement not to

9     bring certain other charges.  This paragraph indicates that

10    the government will not bring any other criminal charges

11    relating to the conduct charged in the superseding

12    indictment or described later on in this agreement.  You

13    understand that paragraph?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  Paragraph ten, elements of the

16    offense.  In this paragraph, which carries on to the top of

17    the next page, discusses each count.  And with each count

18    lists the elements of that offense.  So for damage to

19    religious property in Count 1, there are three elements.

20    First that you defaced, damaged or destroyed religious real

21    property because of the religious character of that

22    property; 2, that you acted intentionally; and 3, that the

23    crime was in or affected interstate or foreign commerce.

24    You understand that if you plead guilty to Count 1 you are,

25    in effect, admitting each of these three elements.  You

1    understand that?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  And then the next one for Count 2,

4    the use of fire or explosives to commit felonies.  It has

5    two elements, first, that you committed a felony for which

6    a person may be prosecuted in a court of law, and second,

7    that you used fire or an explosives to commit the crime.

8    You understand if you plead guilty to Count 2 you are

9    admitting each of these elements?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  And finally, Count 3 at the top of

12   Page 5, using or carrying a firearm during crime of

13   violence.  This has three elements.  First, that you used

14   or carried a firearm; second that you knew that you were

15   using or carrying a firearm; and three, that you used or

16   carried a firearm in relation to a crime of violence.  You

17   understand that if you admit your guilt to Count 3 you are

18   admitting each of these elements, you understand that?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  The next section is captioned

21   sentencing stipulations and agreements.  And paragraph 11

22   talks about the sentencing guidelines.  And that applies

23   particularly in a case where there is a non-binding plea

24   agreement, but here we have a binding plea agreement.  But

25   in any event, there will be a calculation of your prison

1    range under the guideline table.  Let me ask you first,

2    have you discussed the guidelines somewhat with your

3    lawyer?

4              THE DEFENDANT:  Yeah.  Yes, sir.

5              THE COURT:  Okay.  These are directed by 3553(a),

6    a statute which also is mentioned in this paragraph and

7    requires that a court consider other factors in addition to

8    the guidelines at the time of your sentencing.  The last

9    paragraph is -- I'm sorry, the last sentence of that

10   paragraph, paragraph 11 is perhaps most important.  It says

11   that you understand and agree that the plea agreement in

12   this case binds The Court in sentencing as set forth in

13   paragraph 13 below.  You understand that paragraph 11 in

14   total?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Paragraph 12 discusses the

17   presence report which we just touched on.  A presentence

18   report will be prepared and be distributed prior to your

19   sentencing in this case, will be discussed.  Counsel for

20   both sides, including you also will have an opportunity to

21   comment on that presentence report which will gather

22   information about you, your history and the crime in this

23   case.  You understand that?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  Now, paragraph 13, which was

1    mentioned a moment ago, at the top of Page 6 indicates that

2    after we have considered the factors under 3553(a), and by

3    the way, those factors include the nature and circumstances

4    of your crime, the history and characteristic of you as the

5    defendant, the need for the sentence to reflect the

6    seriousness of the crime, promote respect for the law and

7    provide for a just punishment, deter you and others from

8    crimes like this, protect the public from crimes like this

9    as well as providing you with any needed training or

10   treatment.  Those are the factors under 3553(a) that are

11   referenced in this paragraph.

12            And this paragraph goes on to say that neither

13   party, that means of course you as well, neither party will

14   recommend or suggest in any way a departure or variance is

15   appropriate regarding the agreed upon sentence in this

16   agreement of 20 years in prison.  You understand that?

17            THE DEFENDANT:  Yes, sir.

18            THE COURT:  And you agree with that?

19            THE DEFENDANT:  Yes, sir.

20            THE COURT:  Paragraph 14 is captioned allocation.

21   And what that means, at the time of sentencing you and the

22   lawyers will have an opportunity to speak and have an

23   opportunity to tell me what you think is important in this

24   case.  You understand that?

25            THE DEFENDANT:  Yes, sir.

```
 1              THE COURT:  Paragraph 15 is captioned stipulated
 2    guideline computations.  And it talks about the guideline
 3    range which I referenced earlier and the guideline manual
 4    which sets forth points for the crimes in this case.  And
 5    that you agree with those calculations in this paragraph
 6    and agree that Count 2 carries a mandatory term in prison
 7    of ten years which must be served consecutively to Count 1.
 8    And you understand and agree that Count 3 carries a
 9    mandatory term of five years which must be served
10    consecutively to Count 2.  And that, based on the guideline
11    range calculation, I'm now at the top of Page 7, which will
12    likely be 51 to 63 months, the mandatory terms of
13    incarceration applicable to Counts 2 and 3 along with the
14    3553(a) factors result in a commitment to the Bureau of
15    Prisons for a term of 20 years.  You understand this
16    important paragraph?
17              THE DEFENDANT:  Yes, sir.
18              THE COURT:  Paragraph 16 talks about acceptance
19    of responsibility and indicates that the guideline range
20    may be affected by three levels down based upon your
21    acceptance of responsibility, and you understand that it
22    will be up to me at the time of sentencing to determine
23    whether a reduction is appropriate.  You understand that?
24              THE DEFENDANT:  Yes, sir.
25              THE COURT:  You also understand that this
```

1    paragraph 16 in no way will change the ultimate sentence

2    that has been agreed upon as reflected in paragraph 15, you

3    understand that?

4             THE DEFENDANT:  Yes, sir.

5             THE COURT:  Paragraph 17 is criminal history

6    category, indicates neither side has an agreement about

7    what your criminal history category is in this case.  That

8    will be determined at the time of the presentence report.

9    You understand that?

10            THE DEFENDANT:  Yes, sir.

11            THE COURT:  The next section, the super caption

12   is waiver of appeal and post conviction attack.  And there

13   are two paragraphs in this section, 18 and 19.  And 18

14   talks about you giving up your right in limited

15   circumstances to appeal the conviction or sentence in this

16   case.  This is a matter that we touched on at the earlier

17   part of this hearing, and it also indicates that you will

18   not challenge the conviction or sentence collaterally, and

19   that you voluntarily and expressly waive those rights

20   except as reserved in this paragraph.  You understand this

21   paragraph?

22            THE DEFENDANT:  Yes, sir.

23            THE COURT:  And it goes on to more detail in the

24   top of the next page.  And indicates those exceptions which

25   are carved out from your waiver.  You agree with this

1    paragraph?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  The next section is factual basis and

4    relevant conduct.  It is paragraph -- I may have misspoke

5    earlier when I said paragraphs 18, 19.  It is only

6    paragraph 18 that deals with the waiver of appeal and post

7    conviction attack.

8              Paragraph 19 is quieting lengthy, goes on to 20,

9    and that's a factual basis and relevant conduct section and

10   we're going to skip over that and come back to that in a

11   moment.  I'm going have the Assistant U.S. Attorney discuss

12   that case in detail with you.

13             The next section I want to discuss is paragraph

14   21 restitution.  And we touched upon this earlier.  This

15   paragraph sets forth in some detail your agreement to make

16   full restitution as ordered by this court for losses that

17   were caused by your conduct in this case.  And that you

18   agree not to seek discharge of any obligation of

19   restitution, and that this will be included and discussed

20   in the probation office's report.  The presentence report,

21   which will be available to us at the time of sentencing,

22   and you understand that this restitution order could exceed

23   $1 million due to the amount of loss associated with fire

24   and water damage at the Islamic Center, you understand this

25   paragraph?

1            THE DEFENDANT:  Yes, sir, but I don't know where

2      they get $1 million though.

3            THE COURT:  That's correct, we don't know the

4      exact sum, and that will come out in more detail in the

5      presentence report at the time of your sentencing.  But

6      what they're doing is telling you that it could exceed

7      $1 million.  We don't know right now.  It is hoped at the

8      time of sentencing we'll have a more exact figure that I am

9      trusting counsel for both sides and you will have some

10     conversations about.  And if there's disagreement,

11     Mr. Linn, at the time of sentencing it will be up to me to

12     decide what that number is.  You understand all that?

13            THE DEFENDANT:  Yes, sir.

14            THE COURT:  Very good.  The final section is

15     captioned other provisions.  It includes a number of items

16     in paragraph 22 through 28 including, in paragraph 22, a

17     discussion of financial statement; 23, that the parties are

18     free to advise The Court about matters not expressly

19     addressed; 24, sentencing recommendation binding on The

20     Court, that's an important paragraph which has also been

21     repeated earlier in this agreement; paragraph 25,

22     consequences of breaching the plea agreement and sets forth

23     your understanding that if you breach any promise in this

24     agreement or if I reject your guilty plea, or it's vacated

25     or set aside, that the government will be released from its

1    obligations under this agreement and may institute or

2    maintain charges and make recommendations with respect to

3    sentencing that otherwise would be prohibited under the

4    terms of this agreement.  Defendant understands, however,

5    that a breach of this agreement by the defendant will not

6    entitle you to withdraw, vacate or set aside your guilty

7    plea or conviction.  You understand all these paragraphs

8    including importantly numbers 24 and 25?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Paragraph 26 is captioned agreement

11   not binding on other jurisdictions and agencies; 27, that

12   you are satisfied --

13             MR. HART:  Judge --

14             THE COURT:  I'm sorry.

15             MR. HART:  The final sentence in paragraph 26

16   probably does -- involves the non-prosecution agreement

17   with Wood County.

18             THE COURT:  Thank you.  Then we will discuss that

19   in more detail.  This paragraph 26 indicates that this plea

20   agreement is binding only on the U.S. Attorney's Office for

21   the Northern District of Ohio.  It does not bind other U.S.

22   attorneys, other federal agencies or other state or local

23   governments.  And in particular if I accept this binding

24   plea agreement and I, in fact, impose a term of 20 years,

25   the Wood County prosecutor's office agrees not to bring any

1   criminal charges against you stemming from the conduct

2   described in this agreement.  You understand this

3   paragraph?

4           THE DEFENDANT:  Yes, sir.

5           THE COURT:  And paragraph 27 indicates that you

6   are satisfied with the assistance of counsel, as we touched

7   on earlier in our hearing today, and that defendant makes a

8   number of truthful statements as outlined in this

9   paragraph.  You've read and understand this paragraph as

10  well?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  Finally, paragraph 28 states this

13  agreement is complete and voluntarily entered into by you,

14  you understand this paragraph and agree with it as well?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Let me at this juncture ask the U.S.

17  attorney to summarize those paragraphs that we passed over

18  and complete our review of this agreement.  And I would

19  direct you to Page 8, paragraphs 19 and 20, which continue

20  on to Page 9 and 10.  Ms. Dustin?

21          MS. DUSTIN:  Thank you, Your Honor.

22          THE COURT:  Please listen carefully, Mr. Linn,

23  because I will have questions for you about this.

24          MS. DUSTIN:  The defendant agrees that the

25  factual basis set forth in the plea agreement fairly and

1    accurately describes the offense conduct and sets forth the

2    factual basis for the guilty plea, specifically, though, if

3    this case proceeded to trial the evidence would establish

4    beyond a reasonable doubt that on September 30th, 2012, the

5    defendant, Randolph Linn, left his residence in St. Joe,

6    Indiana driving a red four door Chevrolet Sonic.

7            Inside of the defendant's vehicle were numerous

8    firearms and three red gas cans.  The defendant then

9    crossed state lines and entered the state of Ohio.  Near

10   Perrysburg, Ohio he stopped at a gas station where he

11   filled the three red gas cans with gasoline.

12           He then drove to the Islamic Center of Greater

13   Toledo referred to as The Islamic Center, which is located

14   on Schneider Road in Perrysburg, Ohio.

15           THE COURT:  These are the three paragraphs on

16   Page 8 of the plea agreement denoted as paragraphs A, B and

17   C.  You agree with each of these paragraphs, Mr. Linn?

18           THE DEFENDANT:  Yes, sir.

19           MS. DUSTIN:  The Islamic Center is an Islamic

20   mosque which is a religious place of worship for

21   practitioners of the Islamic faith.

22           Turning now to Page 9, paragraph D of the plea

23   agreement, the defendant made numerous attempts to enter

24   the Islamic Center before gaining entry through one of the

25   Islamic Center's first floor doors.  He then entered the

1  Islamic Center and walked through many rooms of the center

2  while carrying a handgun in his left hand.

3         Paragraph E, after walking through the Islamic

4  Center he exited the building and returned with a red gas

5  can.  He then entered the prayer room which is on the

6  second floor of the Islamic Center and poured the gasoline

7  on the prayer rug, a large patterned style rug used by

8  members of the Islamic Center during their prayer services.

9  He then set fire to the prayer rug.

10        Paragraph F --

11        THE COURT:  Let me stop you there.  Paragraphs D

12  and E on this page, Mr. Linn, you agree with each of these

13  two paragraphs?  Are they correct?

14        THE DEFENDANT:  Yes, sir.

15        MS. DUSTIN:  The defendant acknowledges that the

16  Islamic Center, along with the prayer room and prayer rug

17  contained therein, are religious property.  He further

18  acknowledges that he intentionally set the fire because of

19  the religious character of that property.

20        Paragraph G, the bottom of Page 9, he

21  acknowledges that the circumstances of these offenses

22  affected interstate or foreign commerce because the

23  circumstances included, among other things, that the

24  defendant crossed state lines to commit these crimes, he

25  drove an instrumentality of interstate commerce,

1    specifically the red Chevy Sonic from his home in Indiana

2    to the Islamic Center in Ohio.  He transported numerous

3    firearms, all of which were manufactured outside of the

4    State of Ohio in his vehicle and to the Islamic Center.

5           The Islamic Center of Greater Toledo also

6    operated a school and a store, both of which were engaged

7    in interstate commerce, and that they purchased items for

8    use in the school or resale in the store which were

9    manufactured outside of the State of Ohio.  And the

10   defendant purchased the gasoline used to start the fire at

11   a gas station near Perrysburg, Ohio.

12          THE COURT:  You understand these two paragraphs,

13   F and G and you agree with each of them?

14          THE DEFENDANT:  Yes, sir, I do.

15          MS. DUSTIN:  On the top of Page 10, subparagraph

16   H, the defendant -- defendant acknowledges and agrees that

17   destruction of religious property in violation of Title 18,

18   United States Code Sections 247(a)(1) and (d)(3) may be

19   prosecuted in a court of the United States.

20          Paragraph five he further acknowledges and agrees

21   that the use of fire or explosives to commit a felony in

22   violation of Title 18 U.S. code section 844(h)(1) is a

23   crime of violence and may be prosecuted in court of the

24   United States.

25          Subparagraph J, he acknowledges and agrees the

1   conduct described herein occurred in the Northern District

2   of Ohio, Western Division.

3           Finally, paragraph 20, the defendant acknowledges

4   that this summary of his conduct does not set forth each

5   and every fact that the U.S. Attorney's Office could prove

6   at trial, nor does it encompass all of the acts which he

7   committed in furtherance of the offenses to which he is

8   pleading guilty.

9           THE COURT:  Mr. Linn, you agree also with

10  subparagraphs H, I and J?

11          THE DEFENDANT:  Yes, sir, I do.

12          THE COURT:  And paragraph 20 as well?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  Mr. Hart, anything you or your client

15  wish to add to the factual basis as set forth in these

16  paragraphs?

17          MR. HART:  No, Your Honor.

18              (Mr. Hart and defendant conferring off the

19              record.)

20          THE COURT:  Let the record reflect that defendant

21  and his counsel are having a private conversation.

22          MR. HART:  Thank you, Your Honor.

23          THE COURT:  Mr. Linn, we noted earlier in this

24  hearing that you had initialed each page of the agreement

25  in the lower right-hand corner.  Did you read this plea

1    agreement?

2              THE DEFENDANT:  Yes, sir, I did.

3              THE COURT:  And you discussed it with your

4    lawyer; is that correct?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  In addition to the initials, have you

7    signed the agreement on page 13?

8              THE DEFENDANT:  Not on this copy here I haven't,

9    sir.

10             THE COURT:  Then I would ask you at this moment

11   in time if you wish to discuss this agreement at all and

12   additional time will be given to you to do so with your

13   lawyer.  If you're satisfied with your understanding of the

14   agreement, you may sign and date and then hand it to your

15   lawyer for similar signing and date.

16             MR. HART:  Agreement's been executed, Your Honor.

17   Everyone else has executed it.

18             THE COURT:  Would you hand it then to our deputy

19   clerk, please.

20             Given this nature of this proceeding, Mr. Linn,

21   and given the request that this be a binding plea

22   agreement, I feel obligated to ask you some questions now

23   that I might otherwise ask you at a sentencing hearing.

24   But I think it appropriate for me to ask you these

25   questions now.  And my first question to you is what

1    motivated you to commit these acts?

2              THE DEFENDANT:  Newspaper.  Newspaper, radio

3    stations I listen to, news.  Every day you turn on the TV

4    you see Muslims killing Americans, trying to blow up stuff.

5    It was my way, I guess, in trying to get some payback for

6    people that got killed, all the Muslims over in the Middle

7    East, you know.

8              THE COURT:  And was there something that

9    triggered you on this particular day to take the action?

10             THE DEFENDANT:  I was watching something on TV

11   and I don't know.  They had a vet get up missing both his

12   legs, both his arms and that really set me off.  It was on

13   television.

14             THE COURT:  So was this impulsive, or was this

15   something you thought about for a period of time?

16             THE DEFENDANT:  No, I definitely did not think

17   about it.  It's something I just jumped up and did.

18             THE COURT:  Did you discuss it with anyone or

19   just hop in the car?

20             THE DEFENDANT:  No, just hopped in the car and

21   did it.

22             THE COURT:  Were you drinking or smoking anything

23   that night?

24             THE DEFENDANT:  Yes, sir, drinking.

25             THE COURT:  Drinking?

1             THE DEFENDANT:  Beer.

2             THE COURT:  Had you had a lot of beer?

3             THE DEFENDANT:  Thirty pack and probably half

4    another 30 pack.

5             THE COURT:  Say that again.

6             THE DEFENDANT:  A 30 pack and half another 30

7    pack, so 30 and 15, 45 beers.

8             THE COURT:  Over what period of time?

9             THE DEFENDANT:  From the time my wife went to

10   work until, I don't know, 3:00.

11            THE COURT:  Give me a number of hours.  That

12   doesn't help me.  So over what period of time are you

13   telling me you had 45 beers?

14            THE DEFENDANT:  Probably about six, seven hours I

15   guess.

16            THE COURT:  Is that unusual for you or usual?

17            THE DEFENDANT:  That's a little on the high side.

18            THE COURT:  Did you have any trouble driving?

19            THE DEFENDANT:  No because I do that for a

20   living.  All I've got to do --

21            THE COURT:  You don't usually drive and drink

22   with those quantities in you, do you?

23            THE DEFENDANT:  No.  No.  I normally don't drive

24   at all because I've got a CDL license driving semis and

25   that's a no no.  I normally don't drink and drive at all.

1   Why I did that time -- I usually have my son or wife take

2   me somewhere if I've been drinking.

3           THE COURT:  And what led you to the Islamic

4   Center in Perrysburg?  Had you been there before or been by

5   it before?

6           THE DEFENDANT:  I've been by it a bunch of times.

7   I used to haul steel for Heidtman Steel in Toledo, I'd go

8   by it just about every day.

9           THE COURT:  I take it you didn't know anybody

10  that was a member of that congregation?

11          THE DEFENDANT:  No, I didn't know any Muslims.

12  The only Muslims I knew is what I seen on TV and heard on

13  the talk radio shows, Fox News, watching all that stuff.

14  And I had a really bad opinion of them, and it was my way

15  of getting some payback I guess, which I really didn't hurt

16  anybody but myself and my family.

17          THE COURT:  Do you think all Muslims are

18  terrorists or bad people?

19          THE DEFENDANT:  I would say -- yeah, I would say

20  they are, most of them.

21          THE COURT:  Do you know anything about the

22  Islamic faith, have you ever studied it?

23          THE DEFENDANT:  They don't believe in Jesus

24  Christ as a savior, I know that much.

25          THE COURT:  There are other religious that don't

1    believe in Jesus Christ.

2         THE DEFENDANT:  But they're not going around

3    killing us.

4         THE COURT:  Is there anything else about this

5    crime that you want to share with me at this juncture?

6         THE DEFENDANT:  Well, I feel -- feel bad I did

7    it, little too late now.

8         THE COURT:  How long did it take you to drive

9    here and get there?  So you had a certain amount of time to

10   be thinking about this while you were driving, and

11   apparently nowhere along the way did you stop and slap

12   yourself and say, man, this is a dumb idea?

13        THE DEFENDANT:  Yeah I know, yeah.  On the way

14   going -- coming back I thought what in the heck did I just

15   do.  I couldn't believe I did it.  I never been in trouble

16   before.  What made me do that, I don't know.  I guess we'll

17   never know.

18        THE COURT:  The plea agreement that I have been

19   handed by my deputy clerk, the record should reflect

20   includes today's date with the signature of the defendant,

21   along with his counsel, along with the three assistant U.S.

22   attorneys who are present today.  And before I sign the

23   agreement, a few final words with you, Mr. Linn.

24        MS. DUSTIN:  Your Honor, may I interrupt and ask

25   for -- ask a request.  At some point can the government

1    respond to some of the statements the defendant made?

2    Because we do have some evidence to rebut some of the

3    statements, and we would like to make a record of that.

4              THE COURT:  Why don't you do so now before I have

5    to make my decision.  I think, yes, absolutely I would want

6    to hear --

7              MS. DUSTIN:  Just a few things with respect to

8    the evidence that the government would -- would be able to

9    establish.  The evidence would show that the defendant

10   actually had made a threat to burn down the Islamic Center

11   approximately two weeks before he actually did set fire to

12   it.  Also the evidence that we have would show that --

13             THE COURT:  He made that threat to whom?

14             MS. DUSTIN:  He made it to his son.  He had

15   stated that intention approximately two weeks previously to

16   his son.  Also with respect to his allegation that, you

17   know, or his -- that he was drunk and didn't know what he

18   was doing, the drive from St. Joe, Indiana to Perrysburg is

19   approximately an hour and 45 minutes to two hours.  Also as

20   The Court -- I don't know if The Court's ever been to the

21   Islamic Center but it's not an easy building to locate.

22   Although it's a large building when you see it from

23   Interstate 75 and 475 you think it's right there, but you

24   actually have to get off the interstate and wind through

25   several roads in order to get there.  He's also shown on

1   videotape --

2            THE COURT:  Maybe he used Mapquest or Google.

3   Did you?

4            THE DEFENDANT:  I do have that but I wasn't using

5   nothing.

6            THE COURT:  You were able to figure it out?

7            THE DEFENDANT:  Yeah, it was easy.  I drive for a

8   living, I've got over a million miles.

9            MS. DUSTIN:  He also pumped gas.  We have him on

10  videotape pumping gas at a gas station in Perrysburg -- I

11  don't think it was Perrysburg, it was another city --

12           THE DEFENDANT:  Ridgeville Corners.

13           THE COURT:  Where was it, Ridgeville Corners?

14  Too bad you didn't run out of gas or the gas station wasn't

15  closed.

16           MS. DUSTIN:  When he arrived at the Islamic

17  Center at one point when he entered he actually pulled his

18  sleeve over the can to open the door.  The videotape also

19  shows he walked throughout the Islamic Center looking at

20  every room as if looking to clear the place.

21           THE COURT:  Looking to clear the place?

22           MS. DUSTIN:  Looking in every room, looking for

23  people or seeing if anyone was there.  But he walks in and

24  out of every room or many of the rooms of the Islamic

25  Center.

```
 1              THE COURT:  So what were you doing, Mr. Linn?
 2    Were you looking for people or just looking for a place to
 3    start the fire?
 4              THE DEFENDANT:  I was looking for a place.  I
 5    wanted to make sure there was no one in there and walking
 6    around.  I was drinking a beer too while I was doing that.
 7              MS. DUSTIN:  That is true because we found a can
 8    of beer inside of the Islamic Center.  And as The Court --
 9    also he was carrying a firearm when he walked throughout
10    the Islamic Center, and had the firearm displayed.
11              THE COURT:  And this occurred at approximately
12    what time?
13              MS. DUSTIN:  4 -- it was between 4:10 in the
14    afternoon and 4:54 in the afternoon.  There had been people
15    at the Islamic Center just prior to that.  They had -- they
16    had left, several people had been at the center just prior
17    to that time.
18              Also after the defendant was arrested in Indiana
19    outside of his place of employment and he was placed in one
20    of the patrol cars, he stated "F those Muslims", and "They
21    would kill us if they got the chance."  He also said "Do
22    you know we have Muslims working in Homeland Security
23    Department?  Do you know we have Muslims working in the
24    White house and they're on the terrorist no fly list."  And
25    that was said -- those statements were stated in our
```

1   written, in a report by the arresting officer.

2          THE COURT:  Mr. Hart, anything you wish to

3   respond to?

4          MR. HART:  Your Honor, I could have misheard but

5   I don't believe Mr. Linn excused the conduct or made any

6   statement with respect to his culpability in terms of

7   alcohol.  He was just simply responding to The Court's

8   questions.  So I'd leave the factual basis be, and he would

9   be otherwise sufficient.

10         THE COURT:  I didn't hear the end, the factual

11  basis --

12         MR. HART:  Would be otherwise sufficient.

13         THE COURT:  Then back to where we were, and that

14  is having identified the signatures that are on the plea

15  agreement.  And before I sign this binding agreement, I

16  want to ask a few final questions of you, Mr. Linn.  Are

17  you prepared to live by this agreement?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  You understand that by signing this

20  agreement you'll have no trial of any kind?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  You understand you have no right to

23  appeal your conviction, you understand that?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  And you understand that I will enter

1  a judgment of guilty on the basis of your guilty plea as

2  reflected in this agreement?

3             THE DEFENDANT:  Yes, sir.

4             THE COURT:  Have any threats or promises been

5  made to you to enter into this plea agreement?

6             THE DEFENDANT:  No, sir.

7             THE COURT:  Is your willingness to do so entirely

8  voluntary?

9             THE DEFENDANT:  Yes, sir, it is.

10            THE COURT:  And you are prepared to plead guilty

11 then of your own free will because you are, in fact,

12 guilty?

13            THE DEFENDANT:  Yes, sir.

14            THE COURT:  Do you feel it's in your best

15 interest to enter into this plea agreement?

16            THE DEFENDANT:  Yes, sir.

17            THE COURT:  We're at that point in the hearing

18 then for me to ask you, what is your plea with respect to

19 Count 1 of the superseding indictment?

20            THE DEFENDANT:  Guilty.

21            THE COURT:  And what is your plea with respect to

22 Count 2 of the superseding indictment?

23            THE DEFENDANT:  Guilty.

24            THE COURT:  And what is your plea with respect to

25 Count 3 of the superseding indictment?

1           THE DEFENDANT:  Guilty.

2           THE COURT:  And your guilty pleas on each count

3  are entirely voluntary, correct?

4           THE DEFENDANT:  Yes, sir.

5           THE COURT:  No one has made a threat or a promise

6  for you to enter into these guilty pleas, correct?

7           THE DEFENDANT:  No, sir.

8           THE COURT:  Correct.  No, sir.  Let's try that

9  again.  Has anyone made a threat or promise for you to

10  enter into these guilty pleas?

11          THE DEFENDANT:  No, sir, they haven't.

12          THE COURT:  Your guilty pleas then are of your

13  own free will because you are, in fact, guilty?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Since you acknowledge that you are in

16  fact guilty as charged in the three counts of the

17  superseding indictment, you have had the assistance of an

18  able lawyer, you know your right to a trial which is being

19  waived if I accept your guilty pleas, you know what your

20  sentence in this case will be under this binding agreement,

21  namely 20 years.  You know what the guidelines provide on

22  the basis as well as your maximum penalties under statute,

23  and on the basis of the answers given by you under oath and

24  on the record here today, I find as follows:  I find that

25  you were advised of your Constitutional rights, that you

1    made a knowing, intelligent, voluntary waiver of those

2    rights, and, further, that you were advised of your limited

3    rights to appeal.  I further find your guilty pleas were

4    made knowingly, voluntarily with an understanding of the

5    charges and the potential penalties resulting from your

6    guilty pleas.  I accept your plea of guilty as to each

7    count.

8              I will now approve the binding plea agreement,

9    and a copy of that plea agreement will be filed and made

10   part of the record in this case reflecting a finding of

11   guilt on each of the three counts.  And I now order a

12   presentence investigation to begin, and your counsel knows

13   how to commence that process with that paperwork.

14             I have discussed briefly with counsel before the

15   hearing that we are scheduling this case for sentencing on

16   Tuesday April 16th at 3:00 p.m.  And it is our hope by that

17   time we'll have additional information under consideration

18   including the details of restitution.  Counsel, please

19   timely review that report well ahead of our sentencing

20   hearing so you can file any appropriate sentencing memos.

21   Defendant's detention will be ordered continued to that

22   sentencing date.

23             Do you have any final questions of me, Mr. Linn,

24   anything at all about your case, your plea or the hearing

25   today?

1                    THE DEFENDANT:  No, sir.

2                    THE COURT:  Have you understood everything we've

3      covered in this hearing?

4                    THE DEFENDANT:  Yes, sir, I have.

5                    THE COURT:  Before we adjourn I do have a few

6      comments.  Given that this is a binding plea agreement, and

7      given that I have accepted the recommendation of a 20 year

8      sentence, I think it's appropriate for me to make a few

9      comments.

10                    Mr. Linn, whatever your motivation in committing

11     this crime, you are no better than any terrorist or

12     extremist that you apparently sought to punish.  And what

13     you may not have realized is that you chose a target that

14     was the opposite of what you sought to destroy.  The mosque

15     in Northwest Ohio is the symbol of cooperation and

16     acceptance and is reflective of an integration of several

17     cultures.  It is a symbol of the best that America offers.

18     It is a symbol of what has brought generations of

19     immigrants to our shores, respect, tolerance and freedom.

20     And as someone who served in the military, it's especially

21     disappointing that you missed that understanding.  Your

22     attack on this holy place of worship is an attack on all

23     churches, synagogues or mosques.

24                    I'm not sure how someone like you becomes so

25     obsessed as to chart a plan like this.  You indicated that

1    the inundation of 24/7 news may have been a factor.  I'm

2    not sure what you sought to achieve by this act.  But what

3    happened here is that you knocked on the wrong door.  You

4    did not attack the extremists or the terrorists.  Quite the

5    opposite.  You attacked a place where families of different

6    cultures come to pray, a place of peace.  If only you could

7    have understood and seen the faces of those families that

8    worship there, perhaps your trip to Ohio could have been

9    avoided.  If only you could have talked with the Shousher

10   family, the Kadri family, or other families there, you

11   would have seen how wrong you were.

12          What makes this crime especially abhorrent is

13   that it was an attack on a place of worship, and of course

14   this country was founded in part on freedom of religion.

15   You have attacked that freedom and done so by branding a

16   certain religion as endorsing violence, which of course is

17   not the case.  Ironically it is your own violence that was

18   sinful and evil.

19          I want to paraphrase New York City Mayor Michael

20   Bloomberg as follows:  "We may not always agree with every

21   one of our neighbors; that is part of living in such a

22   diverse country.  But we also recognize that part of being

23   American is living with your neighbors in mutual respect

24   and tolerance.  It was exactly that spirit of openness and

25   acceptance that was attacked on 9-11-2001."  And I would

1  say so it is with your attack on September 30th of this

2  year.

3          If there's nothing further from counsel for

4  either side, we are adjourned.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1               C E R T I F I C A T E

2

3          I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled matter.

5

6    s:/Angela D. Nixon

7    --------------------------                 -----------

8    Angela D. Nixon, RPR, CRR                  Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```