```
 1                    UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF OHIO
 2                          WESTERN DIVISION

 3   UNITED STATES OF AMERICA,-      Docket No. 3:12-cr-495
                                -
 4       Plaintiff,             -    Toledo, Ohio
                                -    April 16, 2013
 5          v.                  -    Sentencing
                                -
 6   RANDOLPH LINN,             -
                                -
 7       Defendant.             -
     -------------------------------

 8
                      TRANSCRIPT OF SENTENCING HEARING
 9             BEFORE THE HONORABLE JACK ZOUHARY
                   UNITED STATES DISTRICT JUDGE.
10
     APPEARANCES:
11
     For the Plaintiffs:   United States Attorneys' Office
12                         By: Ava Rotell Dustin
                           Four SeaGate, Suite 308
13                         Toledo, OH 43604
                           (419) 259-6376
14
                           United States Attorney's Office
15                         By:  Bridget M. Brennan
                           Suite 400
16                         801 Superior Avenue, W
                           Cleveland, OH 44113
17                         (216) 622-3810

18                         Gwen Howe-Gebers

19   For the Defendant:    John B. Thebes
                           Suite 1000
20                         405 Madison Avenue
                           Toledo, OH 43604
21                         (419) 242-1400

22   Court Reporter:       Tracy L. McGurk, RMR, CRR
                           1716 Spielbusch Avenue
23                         Toledo, Ohio 43604
                           (419) 213-5520
24
     Proceedings recorded by mechanical stenography,
25   transcript produced by notereading.
```

1          (Commenced at 3:07 p.m.)

2          THE COURT:  Good afternoon.  We're here on

00:00:01  3  case number 12-CR-495, United States versus Randolph

00:00:08  4  Linn.  Mr. Linn is present in court along with his

00:00:12  5  counsel, John Thebes.  On behalf of the Government we

00:00:15  6  have AUSA Ava Dustin, Bridget Brennan, and Gwen

00:00:19  7  Howe-Gebers.  We also have present from

00:00:22  8  Pretrial/Probation Myrna Greenwood.  I also want to

00:00:26  9  acknowledge a couple interns with our Pretrial Probation

00:00:29  10 office:  Samantha Holly and Renee Patty.

00:00:33  11          This matter is here for a sentencing.  By

00:00:35  12 way of background, the Defendant was charged in three

00:00:40  13 counts; the first being a violation of federal statute

00:00:44  14 for damage to religious property; the second for

00:00:47  15 violation of another federal statute for use of fire or

00:00:50  16 explosives in connection with the commission of a

00:00:53  17 federal felony; and the third count, a violation of yet

00:00:58  18 a third statute, use of a firearm with crime of

00:01:01  19 violence.

00:01:04  20          With respect to those charges, let me

00:01:13  21 indicate that there was a binding Plea Agreement that

00:01:20  22 took place, and the Defendant pled and this Court

00:01:23  23 accepted at an earlier hearing that binding Plea

00:01:27  24 Agreement.  And by statute Defendant faces for Count 1

00:01:32  25 up to 20 years in prison; for Count 2 a ten-year

| | | |
|---|---|---|
| 00:01:36 | 1 | mandatory; and Count 3, a five-year mandatory minimum; |
| 00:01:43 | 2 | that is, for Count 2 a ten-year mandatory minimum; Count |
| 00:01:47 | 3 | 3 a five-year mandatory minimum. |
| 00:01:50 | 4 | Also supervised release for each of those |
| 00:01:52 | 5 | counts is up to three years. |
| 00:01:54 | 6 | The guideline range in this case, I will |
| 00:01:56 | 7 | confirm with counsel, the guideline range reflects a |
| 00:01:59 | 8 | total offense level of 24, a Criminal History Category |
| 00:02:02 | 9 | I. And the guideline range for Count 1 is 51 to 63 |
| 00:02:07 | 10 | month; for Count 2 is 120 months, again, mandatory |
| 00:02:12 | 11 | minimum; Count 3, 60 months, a mandatory minimum. These |
| 00:02:18 | 12 | mandatory minimums are by statute. |
| 00:02:20 | 13 | Counsel, please confirm with me -- we'll |
| 00:02:22 | 14 | start with the Government -- that you have reviewed the |
| 00:02:25 | 15 | Presentence Report, that my summary of the potential |
| 00:02:28 | 16 | penalties both by statute and guideline range is |
| 00:02:31 | 17 | accurate. |
| 00:02:32 | 18 | MS. HOWE-GEBERS: Your Honor, we have read |
| 00:02:34 | 19 | the report. In reviewing the report, Count 3 is up to |
| 00:02:37 | 20 | five years; I believe Counts 1 and 2 are three years. |
| 00:02:43 | 21 | THE COURT: You're talking about supervised |
| 00:02:47 | 22 | release? |
| 00:02:47 | 23 | MS. HOWE-GEBERS: Supervised release, yes, |
| 00:02:49 | 24 | Your Honor. |
| 00:02:49 | 25 | THE COURT: You're right. It is an error in |

| | | |
|---|---|---|
| 00:02:51 | 1 | the report in one place and correct elsewhere.  Let the |
| 00:02:55 | 2 | record reflect that Count 3 is up to five years of |
| 00:02:58 | 3 | supervised release.  And to make sure we're clear, Count |
| 00:03:09 | 4 | 2, three years? |
| 00:03:10 | 5 | MS. HOWE-GEBERS:  Yes, Your Honor. |
| 00:03:11 | 6 | THE COURT:  And Count 1, up to three years |
| 00:03:14 | 7 | supervised release? |
| 00:03:14 | 8 | MS. HOWE-GEBERS:  That is correct, Your |
| 00:03:16 | 9 | Honor. |
| 00:03:16 | 10 | Other than that, we do agree with the |
| 00:03:18 | 11 | Presentence Report. |
| 00:03:18 | 12 | THE COURT:  With that correction let me turn |
| 00:03:20 | 13 | to defense counsel. |
| 00:03:21 | 14 | MR. THEBES:  Judge, there's no objection to |
| 00:03:23 | 15 | making that correction. |
| 00:03:24 | 16 | I have reviewed the Presentence Report with |
| 00:03:27 | 17 | Mr. Linn, find it to be accurate in all respects, Judge. |
| 00:03:31 | 18 | We're prepared for sentencing today. |
| 00:03:33 | 19 | THE COURT:  Thank you. |
| 00:03:34 | 20 | Mr. Linn, let me confirm with you that |
| 00:03:35 | 21 | you've had an opportunity to review this presentence |
| 00:03:38 | 22 | report that I've referenced and talked to your lawyer |
| 00:03:40 | 23 | about it; is that correct? |
| 00:03:43 | 24 | THE DEFENDANT:  Uh-huh.  Yeah. |
| 00:03:43 | 25 | THE COURT:  That's a yes? |

00:03:45   1            THE DEFENDANT:  Yes.

00:03:45   2            THE COURT:  Very good.  The Presentence

00:03:46   3   Report then will be made part of the record in this case

00:03:49   4   under seal and available as necessary.

00:03:51   5            Having confirmed the guideline range and the

00:03:54   6   statutory potential penalties in this case; having

00:03:58   7   received the concurrence of counsel with my

00:04:01   8   calculations; I have not received any sentencing memos,

00:04:08   9   not unusual given the binding Plea Agreement in this

00:04:10  10   case; I have no letters or other documents from either

00:04:13  11   side; unless there are additional documents, I'm

00:04:16  12   prepared to turn the floor over to what I understand

00:04:18  13   will be some comments from a representative of the

00:04:21  14   mosque, Cherrefe Kadri.  Is that right?

00:04:26  15            MS. KADRI:   Yes, Your Honor.

00:04:26  16            THE COURT:  Cherrefe, do you want to come

00:04:29  17   forward.  You can use the microphone in the middle or --

00:04:33  18   yeah, right up there.  If you want the lectern, you can

00:04:39  19   turn it around and utilize it if you wish.

00:04:45  20            MS. KADRI:  Thank you, Your Honor.  I'm here

00:04:51  21   as a representative of the Islamic Center of Toledo as

00:04:55  22   President of the Center this year.

00:05:01  23            Mr. Linn, as I pondered what to say to you

00:05:06  24   today on behalf of the members of the Islamic Center of

00:05:08  25   Greater Toledo, I analyzed the fallout of that one act

00:05:12  1  of hatred on September 30, 2012, and I was struck by the

00:05:17  2  fact that we've lost a lot, but you've lost much more.

00:05:21  3  And I honestly felt sorry for you.  Much of our loss was

00:05:27  4  material, but it was also psychological.  Our school

00:05:29  5  children had to relocate to a college setting.  Our

00:05:32  6  Sunday school program was held at Perrysburg High

00:05:35  7  School.  And we were in three different locations for

00:05:38  8  our Friday prayers.  We have felt disjointed and afloat

00:05:44  9  for the last six months.

00:05:46  10         Your decision to set fire to our mosque in

00:05:49  11  an attempt to get even with Muslims has resulted in the

00:05:53  12  opposite reaction.  We're very fortunate in the Toledo

00:05:58  13  area in that we enjoy a healthy and vibrant interfaith

00:06:02  14  community.  Church groups visit temples; Muslims

00:06:06  15  participate in Christian programs; and Jews invite

00:06:09  16  everyone to share seder.  So when you injured us, you

00:06:13  17  injured the entire greater Toledo community.

00:06:18  18  Non-Muslims have said to me:  Why would someone want to

00:06:22  19  damage our mosque?  They consider this Center theirs.

00:06:26  20  That's the connection we have with each other.  We are

00:06:30  21  friends and neighbors, not "us" and "them."

00:06:34  22         Someone suggested that the Center make a

00:06:36  23  statement that we forgive you for your actions.

00:06:39  24  However, forgiveness is to be sought from God, and the

00:06:43  25  granting of forgiveness is in his jurisdiction alone.

| | | |
|---|---|---|
| 00:06:47 | 1 | God and the holy Quran said that we may avenge an eye |
| 00:06:51 | 2 | for an eye and a tooth for a tooth, but if you do not |
| 00:06:54 | 3 | seek vengeance, you're a better person for it and will |
| 00:06:58 | 4 | be blessed and rewarded.  Vengeance breeds anger and |
| 00:07:03 | 5 | hatred; and that's what brought us together, |
| 00:07:05 | 6 | unfortunately.  We choose to break that cycle of hatred |
| 00:07:09 | 7 | and let justice take its course.  We don't feel anger |
| 00:07:12 | 8 | as much as we feel hurt that someone hated us that much, |
| 00:07:15 | 9 | someone who has never met us, someone who knows nothing |
| 00:07:19 | 10 | about us. |
| 00:07:21 | 11 | So let me tell you just a little about this |
| 00:07:23 | 12 | community that you've targeted.  We are Americans, and |
| 00:07:28 | 13 | our community has been in Toledo for over 60 years. |
| 00:07:32 | 14 | There are several families who are fourth generation |
| 00:07:34 | 15 | Americans.  We are veterans of the U.S. military.  I |
| 00:07:38 | 16 | have a brother and two nephews who have served this |
| 00:07:40 | 17 | country.  And my family is representative of our |
| 00:07:43 | 18 | community, of other families in our community.  We're a |
| 00:07:46 | 19 | hospitable group, and we open our doors to all who |
| 00:07:49 | 20 | enter.  We are engaged in our community and the |
| 00:07:52 | 21 | interfaith community.  We host and participate in those |
| 00:07:56 | 22 | dialogues.  We host health fairs and Red Cross blood |
| 00:08:00 | 23 | drives.  We donate about 18,000 pounds of food every |
| 00:08:03 | 24 | year to local food banks to distribute to anyone who's |
| 00:08:08 | 25 | in need.  At Thanksgiving we donate hundreds of turkeys |

00:08:12  1    we put in baskets so all families can enjoy a meal.    We

00:08:15  2    helped clean up when the tornado struck Lake Township.

00:08:20  3    We build Habitat for Humanity houses.  And we were

00:08:23  4    supposed to host the Silent Witness Project at our

00:08:27  5    Center on October 8, but we couldn't do it because of

00:08:29  6    the fire.  That group stands against and honors the

00:08:34  7    victims of domestic violence who, as we all know, come

00:08:37  8    in all colors, creeds, and social status.  They had to

00:08:41  9    make last-minute plans to relocate that event.

00:08:44  10   Hopefully we can host it this year at our Center.

00:08:48  11            I attended a lecture at the University of

00:08:51  12   Toledo several weeks ago that was being given by the

00:08:53  13   professor of Islamic studies.  And during the question

00:08:56  14   and answer portion of the evening, a young man stated

00:08:59  15   that as of a year ago he knew nothing about Islam, nor

00:09:03  16   did he know any Muslims.  I think that was your

00:09:06  17   statement at your plea hearing.  He went on to say that

00:09:12  18   he attended the international festival on the grounds of

00:09:16  19   our Center last fall and sampled the many varieties of

00:09:19  20   food that we have there.  He then went into the Center

00:09:21  21   and took a tour and learned a little about Islam.  That

00:09:25  22   experience, he said, caused him to patronize some of the

00:09:28  23   ethnic restaurants in town and some of the shops which

00:09:31  24   caused him to meet new people who were different than

00:09:35  25   himself, and he considered that a positive in his life.

00:09:38  1   I wish you would have come and eaten some food with us.

00:09:41  2   Maybe we could have been friends.

00:09:44  3         Mr. Linn, I was one of the last persons in

00:09:46  4   the Center on September 30th.  I was there with four

00:09:49  5   other women who left just mere minutes before you

00:09:52  6   entered.  It was a creepy feeling watching the video of

00:09:56  7   you walking the halls of the Center, and it was

00:09:59  8   frightening to think you could have come upon us toting

00:10:02  9   your gun.  I'd like to think that you would not have

00:10:05  10  used it.  But in order to process the what-ifs of such a

00:10:09  11  situation, I suppose, I joke that it was a good thing

00:10:15  12  for you that you didn't run into these particular five

00:10:18  13  ladies because you might have needed the first

00:10:21  14  responders.  That was a very scary, scary thing to see

00:10:26  15  and to think about.

00:10:29  16         While in prison I hope that you are able to

00:10:31  17  reconcile your anger and your actions and come out of

00:10:34  18  this a better person.  I can't imagine that your

00:10:38  19  expression of anger was worth losing your liberty for so

00:10:41  20  many years, that it was worth the legacy you're leaving

00:10:44  21  for your family.  I honestly pray for you to find inner

00:10:48  22  peace and solace because it seems perhaps that these

00:10:52  23  were missing in your heart.

00:10:55  24         Thank you, Your Honor.

00:10:58  25         THE COURT:  Thank you.  We'll now turn to

| | | |
|---|---|---|
| 00:10:59 | 1 | defense counsel.  Any comments from defense counsel? |
| 00:11:06 | 2 | And then we'll go back to the Government. |
| 00:11:09 | 3 | MR. THEBES:  Judge, very briefly.  First, |
| 00:11:11 | 4 | Mr. Linn has signed two documents, one regarding a |
| 00:11:16 | 5 | sentencing order and restitution and other matters; the |
| 00:11:20 | 6 | other involves his acknowledgment of waiver of certain |
| 00:11:24 | 7 | appellate rights which he has signed.  I've gone over |
| 00:11:27 | 8 | each document with him.  As a matter of fact, I even |
| 00:11:30 | 9 | read word for word the waiver document to him. |
| 00:11:36 | 10 | THE COURT:  We'll take care of that next |
| 00:11:37 | 11 | then.  Let me confirm with you, Mr. Linn, that you have |
| 00:11:40 | 12 | reviewed prior to this hearing with your lawyer these |
| 00:11:42 | 13 | two documents, one captioned Sentencing Order Regarding |
| 00:11:45 | 14 | Restitution and Conditions of Supervised Release.  Did |
| 00:11:48 | 15 | you do that? |
| 00:11:50 | 16 | THE DEFENDANT:  Yes, sir, I did. |
| 00:11:50 | 17 | THE COURT:  And this is your signature along |
| 00:11:52 | 18 | with your lawyer and today's date on that document? |
| 00:11:54 | 19 | THE DEFENDANT:  Yes, sir, it is. |
| 00:11:55 | 20 | THE COURT:  Do you have any questions of me |
| 00:11:57 | 21 | about the document? |
| 00:11:59 | 22 | THE DEFENDANT:  No, sir. |
| 00:11:59 | 23 | THE COURT:  Okay.  The other document that |
| 00:12:01 | 24 | you reviewed with your lawyer is an acknowledgment of |
| 00:12:06 | 25 | your waiver of certain appeal rights.  Your lawyer's |

00:12:09    1    indicated he read this to you.  Did you understand this

00:12:12    2    document as well?

00:12:15    3            THE DEFENDANT:  Yes, I did waive, yes, sir.

00:12:18    4            THE COURT:  Yes, you did.

00:12:20    5            This has your signature and your lawyer's

00:12:23    6    signature with today's date as well?

00:12:26    7            THE DEFENDANT:  Yes, sir.

00:12:26    8            THE COURT:  Both of these documents are

00:12:28    9    accepted and will be filed of record in this case.

00:12:30    10            John, any further comments with respect to

00:12:33    11    sentencing now?

00:12:35    12            MR. THEBES:  Your Honor, there is, very

00:12:36    13    briefly.  As the Court notes, I am the second lawyer

00:12:42    14    that came into this case.  And I think the Court knows

00:12:46    15    through prior experience with me in Common Pleas Court,

00:12:51    16    if the case isn't mine, I really don't pay much

00:12:54    17    attention to it other than maybe reading the headlines

00:12:57    18    or seeing a report on the television news.  I came into

00:13:02    19    this case, and I was not prepared.  I did not understand

00:13:09    20    the depth and breadth of what happened and how it

00:13:13    21    impacted not only the community of the mosque, but

00:13:19    22    everything surrounding it, including our whole community

00:13:23    23    here in Toledo.  It struck me when I went to a social

00:13:29    24    gathering not long after our last hearing and somebody

00:13:35    25    was asking me about this case.  And I really didn't want

| | | |
|---|---|---|
| 00:13:40 | 1 | to talk about it, but I listened more than I talked, and |
| 00:13:46 | 2 | things began to crystallize, at least in my mind, but |
| 00:13:51 | 3 | mostly in my heart. |
| 00:13:52 | 4 | What happened, the acts perpetrated by |
| 00:13:57 | 5 | Randy, are indefensible, and I'm not going to defend the |
| 00:14:00 | 6 | indefensible here today.  But what I began to do was to |
| 00:14:06 | 7 | think of this case in terms of my own life.  What if |
| 00:14:12 | 8 | this had happened to the church where my wife and I and |
| 00:14:16 | 9 | my family go to every Sunday in a sleepy suburb here in |
| 00:14:22 | 10 | metro Toledo?  What if my three children couldn't go to |
| 00:14:26 | 11 | the school in which the church is connected?  And I |
| 00:14:32 | 12 | began to think of this case in a whole new light in |
| 00:14:35 | 13 | terms of how it would impact me, my parish, et cetera. |
| 00:14:47 | 14 | I say it in this context, Judge:  I would be and would |
| 00:14:52 | 15 | have been extremely upset and probably experience the |
| 00:14:57 | 16 | certain stages from denial all the way to acceptance as |
| 00:15:02 | 17 | to what had happened.  I would end up, however, at a |
| 00:15:08 | 18 | point where I think most of my parish would end up, |
| 00:15:15 | 19 | whether it be the pastor telling me, a bishop, a |
| 00:15:19 | 20 | cardinal, or someone in Rome, they would ultimately tell |
| 00:15:26 | 21 | me in my heart and my mind to forgive. |
| 00:15:29 | 22 | Randy hopefully today will ask you folks for |
| 00:15:34 | 23 | your forgiveness.  He has expressed that to me on more |
| 00:15:40 | 24 | than one occasion, and hopefully he will do that today. |
| 00:15:44 | 25 | What a better world it would be if we just forgave. |

| | | |
|---|---|---|
| 00:15:50 | 1 | That's my comment.  I certainly appreciate, however, the |
| 00:15:56 | 2 | harm that has been done, but what a better world it |
| 00:16:02 | 3 | would be if there were more forgiveness.  Thank you, |
| 00:16:05 | 4 | Judge. |
| 00:16:07 | 5 | THE COURT:  Randy, is there something you |
| 00:16:09 | 6 | wish the Court to know, anything you want to add to what |
| 00:16:12 | 7 | your lawyer has just said? |
| 00:16:14 | 8 | THE DEFENDANT:  Yes.  I want to agree with |
| 00:16:17 | 9 | the woman who was up there, with everything she said. |
| 00:16:21 | 10 | That day, September 30th, that wasn't -- it was me that |
| 00:16:25 | 11 | did it, but that's not the me that I normally am.  I was |
| 00:16:31 | 12 | drinking a lot.  My wife, ex-wife, told me I don't know |
| 00:16:38 | 13 | how many times, watch my drinking, you're drinking too |
| 00:16:42 | 14 | much.  I didn't listen to her.  I lost her; I lost my |
| 00:16:46 | 15 | son.  My wife, ex-wife, the one who actually turned me |
| 00:16:52 | 16 | in, her and her friend, and my wife, she's getting |
| 00:16:55 | 17 | kicked out of the house because she can't afford the |
| 00:16:57 | 18 | payments by herself.  So I messed up her life, messed up |
| 00:17:05 | 19 | my own life.  Thank God I didn't hurt anybody at the |
| 00:17:10 | 20 | mosque.  I don't think I would have, but the state of |
| 00:17:16 | 21 | mind I was in, I don't know.  I hopefully wouldn't have. |
| 00:17:20 | 22 | I don't know.  And I'm sorry for everything I've done. |
| 00:17:26 | 23 | I hope some day I can be forgiven. |
| 00:17:29 | 24 | Thank you, Judge. |
| 00:17:32 | 25 | THE COURT:  Let's hear from the Government. |

| | | |
|---|---|---|
| 00:17:34 | 1 | MS. HOWE-GEBERS:  Thank you, Your Honor. |
| 00:17:36 | 2 | Your Honor, I just wanted to touch on a couple things |
| 00:17:39 | 3 | that I believe are contained in the report and what |
| 00:17:43 | 4 | Cherrefe has indicated.  Again, I think I share the same |
| 00:17:46 | 5 | as what Mr. Thebes:  Unless you become part of the case, |
| 00:17:51 | 6 | you don't understand truly the significance of, |
| 00:17:55 | 7 | quote-unquote, an arson fire.  And it was more than just |
| 00:17:59 | 8 | an arson; it caused severe psychological harm to those |
| 00:18:06 | 9 | of that community, of the Islamic community, the |
| 00:18:10 | 10 | children.  I watched on the news the reopening of the |
| 00:18:13 | 11 | school recently on March 15, and to see the children |
| 00:18:18 | 12 | smile about being so excited and being in their own |
| 00:18:22 | 13 | classrooms again; they were deprived of that for six |
| 00:18:25 | 14 | months, wondering whether or not something bad was going |
| 00:18:29 | 15 | to happen to them again if they attended the same |
| 00:18:32 | 16 | school.  And that is still a concern of those in the |
| 00:18:35 | 17 | community and trying to get their enrollment back up. |
| 00:18:39 | 18 | In the report it's referred to Islam phobia |
| 00:18:44 | 19 | because, again, as the Defendant indicated at the plea, |
| 00:18:49 | 20 | he sits and watches TV without really taking that extra |
| 00:18:53 | 21 | step to examine their beliefs, their religion, and their |
| 00:18:58 | 22 | community itself.  They watch the news, make the |
| 00:19:01 | 23 | assumptions, and jump to unjust conclusions.  If more |
| 00:19:06 | 24 | individuals and the Defendant particularly would take |
| 00:19:10 | 25 | the time to understand the community as a whole, just |

| | | |
|---|---|---|
| 00:19:13 | 1 | like Cherrefe stated about all of the things that they |
| 00:19:18 | 2 | are involved in, it's just not what we see on the news, |
| 00:19:22 | 3 | and that just because there are individuals who may hold |
| 00:19:27 | 4 | different religious beliefs or feelings or customs does |
| 00:19:30 | 5 | not necessarily make them a bad person or a bad group. |
| 00:19:35 | 6 | And that's what happened in this case with the |
| 00:19:37 | 7 | Defendant.  If individuals or the community others as a |
| 00:19:42 | 8 | whole would take the time to understand individuals of |
| 00:19:48 | 9 | different beliefs in the Islamic community. |
| 00:19:52 | 10 | I understand that the Defendant states here |
| 00:19:54 | 11 | today that he is sorry; however, in rereading the plea |
| 00:19:59 | 12 | hearing and even listening to his statements today, it |
| 00:20:02 | 13 | is difficult to believe today that he is truly sorry for |
| 00:20:05 | 14 | his actions.  The Government believes he is more sorry |
| 00:20:09 | 15 | for getting caught and ruining his life. |
| 00:20:14 | 16 | There has to be -- the sentencing and part |
| 00:20:17 | 17 | of the discussion of the Government in arriving at this |
| 00:20:21 | 18 | sentence was that it has to send a message to others in |
| 00:20:25 | 19 | the community that this type of activity cannot and will |
| 00:20:29 | 20 | not be tolerated.  So there has to be a message to those |
| 00:20:33 | 21 | watching that if you are thinking about, have any |
| 00:20:37 | 22 | thoughts of, this is what will occur if you do that. |
| 00:20:42 | 23 | And so based upon all of that, Your Honor, |
| 00:20:44 | 24 | in reading the -- the restitution, the Government is |
| 00:20:48 | 25 | asking for the $1.4 million; for the $1,000 deductible |

```
00:20:56   1   for the Islamic Center; the special assessment of $300;
00:21:00   2   and that the 20-year sentence is sufficient but not
00:21:04   3   greater than necessary to comply with the purposes of
00:21:07   4   sentencing; 60 months for Count 1, ten years for Count
00:21:12   5   2, which is mandatory; five-year mandatory on Count 3,
00:21:15   6   and that they all run consecutive along with the five
00:21:19   7   years of -- up to five years of supervised release.
00:21:23   8   Thank you.
00:21:29   9            THE COURT:  Randy, my sentence in this case
00:21:31  10   is guided by the U.S. Supreme Court and other court
00:21:35  11   decisions from this circuit.  These cases require me to
00:21:38  12   consider the guideline range that applies to your case,
00:21:42  13   and we discussed and confirmed that at the outset.  I'm
00:21:47  14   also required to make an individualized assessment of
00:21:50  15   you based upon the facts of your case for an appropriate
00:21:54  16   sentence.  And to do that, at the time of your guilty
00:21:58  17   plea we talked about a statute, 3553(a).  That statute
00:22:02  18   requires that my sentence be sufficient but not greater
00:22:05  19   than necessary, and to arrive at that conclusion to
00:22:09  20   balance the factors from that statute to arrive at a
00:22:13  21   just punishment.  Let us look at what those factors are.
00:22:16  22            First, the nature of the crime that brings
00:22:20  23   us together today.  That is outlined in the Presentence
00:22:24  24   Report.  I will note that the Presentence Report
00:22:27  25   summarizes Counts 1 through 3 in paragraphs 5 through 7.
```

00:22:33  1  And the Plea Agreement, which we discussed at the time

00:22:35  2  of your guilty plea, is summarized in paragraphs 8

00:22:38  3  through 17.  The underlying conduct is set forth in some

00:22:43  4  detail in paragraphs 20 and 21.  Let me just summarize

00:22:48  5  that briefly now.  The evidence in this case was and you

00:22:54  6  pled guilty to that on September 30, 2012, you left your

00:22:58  7  residence in St. Joe, Indiana driving a red four-door

00:23:03  8  Chevrolet Sonic.  Inside the vehicle were numerous

00:23:07  9  firearms and some gas cans, red gas cans.  You crossed

00:23:11  10  state lines, entered Ohio, and near Perrysburg stopped

00:23:16  11  at a gas station where you filled the gas cans with

00:23:18  12  gasoline.  You then drove to the Islamic Center located

00:23:23  13  on Scheider Road in Perrysburg, made several attempts to

00:23:27  14  enter the building before finally gaining entry through

00:23:30  15  one of the first floor doors.  Walked through many

00:23:34  16  rooms of the Center while carrying a handgun in your

00:23:36  17  left hand.  After walking through you exited the

00:23:39  18  building and returned with a red gas can, entered a

00:23:41  19  prayer room on the second floor and poured gasoline on

00:23:44  20  the prayer rug, a large patterned rug used by members of

00:23:48  21  the Center during their prayer services, and set fire to

00:23:51  22  the prayer rug.

00:23:53  23          The prayer room, the prayer rug and

00:23:56  24  religious property was damaged through either fire, or

00:24:00  25  smoke, or water, or all three.  And the evidence would

00:24:06   1   also show and did show at your guilty plea that a week

00:24:10   2   before you set fire you had told a family member that

00:24:13   3   you wanted to burn down a mosque in Toledo, and you had

00:24:17   4   also made numerous derogatory statements about Muslims.

00:24:22   5          So that is, in short verse, what brings us

00:24:25   6   here today.

00:24:26   7          I'm also required under the statute to look

00:24:29   8   at your character and background, and also to take a

00:24:34   9   look, let me add, about the victim impact.  We heard

00:24:37   10  from Cherrefe Kadri from the Center today.  We also have

00:24:40   11  a statement in the Presentence Report in paragraphs 22

00:24:47   12  through 32 which discuss the victim impact, some of

00:24:51   13  which we heard from Ms. Kadri today.  I will also note

00:24:57   14  you did accept responsibility for this, and that's

00:24:59   15  reflected in Paragraphs 34 through 40 of the Presentence

00:25:04   16  Report.

00:25:05   17         And let me now turn to your character and

00:25:11   18  background.  Your personal and family data are

00:25:14   19  summarized in some detail in paragraphs 62 through 72.

00:25:19   20  I have considered all of that.  Your mental, physical,

00:25:24   21  and emotional health is also summarized in paragraphs 73

00:25:28   22  through 82.  Importantly your substance abuse is

00:25:32   23  summarized in paragraphs 83 through 88.  And I heard you

00:25:36   24  today and the report also mentions and in your statement

00:25:41   25  you mentioned that alcohol may well have been a part of

00:25:46  1    your poor decision making in this case.  And I intend to

00:25:49  2    include that as part of my sentencing order to try to

00:25:53  3    address that.  Perhaps there was also Prozac; maybe,

00:25:59  4    maybe not.  But in any event, there's some combination

00:26:02  5    of drug and alcohol here that I'm going to say clouded

00:26:06  6    your judgment that day and led you on that car ride

00:26:10  7    across state lines, that very unfortunate car ride

00:26:14  8    across state lines.

00:26:16  9              Also I want to acknowledge your military

00:26:18  10   record.  You did serve in the U.S. Marines for four

00:26:22  11   years and were honorably discharged, so we do thank you

00:26:25  12   for your service to the country in that regard.

00:26:28  13             Your employment as an over-the-road truck

00:26:31  14   driver is reflected in the report in paragraphs 91

00:26:35  15   through 94.  I have taken into account all of that

00:26:40  16   background as well.

00:26:43  17             You are 52 years old and, as you now

00:26:46  18   indicate, you are divorced.  That is unfortunate.  It is

00:26:50  19   not unusual, Randy, when crimes are committed that

00:26:54  20   family members and others also suffer some consequences

00:26:57  21   from a crime.  That often happens.  And that's very

00:27:00  22   unfortunate.  They are the unintended victims, as I call

00:27:03  23   them.  Some describe it as the collateral consequences

00:27:08  24   of crime because it is not just you that suffers.  In

00:27:12  25   addition to the victims at the mosque, we have your

00:27:17  1   family members who also suffered some consequences.

00:27:21  2           The statute also requires that my sentence

00:27:27  3   reflect the seriousness of the crime, promote respect

00:27:29  4   for the law, and provide for a just punishment; deter

00:27:31  5   you and others from crimes like this; protect the public

00:27:33  6   from violent crimes like this; as well as provide you

00:27:36  7   with needed training and treatment.  In this case we

00:27:39  8   have a bit of an unusual situation because we have a

00:27:42  9   binding Plea Agreement, which I previously reviewed and

00:27:46  10  discussed and accepted.  And I made some comments at

00:27:49  11  that time which I believe still hold true, and I would

00:27:52  12  incorporate them into this hearing as well.

00:27:57  13          Let me note the following: We just yesterday

00:28:11  14  had an incidence of violence in Boston at the Boston

00:28:15  15  Marathon.  And in that situation there was not just

00:28:19  16  property damage; there was personal injury and death

00:28:22  17  involved.  That did not happen in this case,

00:28:26  18  fortunately.  However, the potential was certainly there

00:28:29  19  for that to happen.  You did not know who was in there,

00:28:32  20  who might have been affected by the setting of the fire,

00:28:35  21  whether there could have been either personal injury or

00:28:39  22  death or both.  But what is common in both the Boston

00:28:44  23  Marathon bombing and in this situation is that there was

00:28:48  24  a damage to our American psyche in some way.  You have

00:28:55  25  damaged, you heard it today, the psyche, if you will, of

00:28:58   1    the members of the mosque and their families and the

00:29:02   2    trauma that imposed on them, that emotional damage, if

00:29:05   3    you will.  What you did was also an assault, as was the

00:29:09   4    Boston Marathon bombing, an assault on what I call the

00:29:14   5    American spirit; on our unique and founding principles

00:29:18   6    of freedom, tolerance, and respect.

00:29:27   7            And I would add that in Toledo the mosque is

00:29:30   8    a bit of a landmark off of I-75.  It's easily

00:29:34   9    recognizable, and it is in some ways a testament to the

00:29:37  10    cooperative spirit that you heard referenced earlier of

00:29:40  11    the Toledo community.  It is something special here,

00:29:44  12    perhaps more so than other places.  It's an example in

00:29:48  13    many ways; this area being a melting pot of people from

00:29:51  14    all different faiths and countries who some of us like

00:29:56  15    to believe set an example of how well we get along with

00:29:59  16    each other and how we share with each other.

00:30:03  17            And so the question comes, Randy:  What do

00:30:06  18    you do now?  Do you, faced with a long prison term,

00:30:11  19    throw your hands up in despair and quit?  Or do you use

00:30:16  20    this time to in some way make up for the error of that

00:30:21  21    day?  Do you in some way make yourself a model

00:30:25  22    prisoner, take advantage of the programs that the BOP

00:30:30  23    will offer you?  And perhaps, perhaps one of your

00:30:33  24    options in prison will be to study the religion of Islam

00:30:38  25    and to study what it was that you wrongly targeted that

00:30:42  1   day and perhaps in some way make up for this so that

00:30:47  2   your final chapters, whenever they may be, may be more

00:30:51  3   positive than the mark you leave here today.

00:30:54  4          Pursuant to the Sentencing Reform Act of

00:30:57  5   1984, it's the judgment of the Court to confirm and

00:31:00  6   adopt the previously entered binding Plea Agreement.  I

00:31:04  7   sentence you on Count 1 to 60 months in prison.  On

00:31:07  8   Count 2 I sentence you to 120 months in prison; that is

00:31:12  9   consecutive to Count 1 and Count 3.  And on Count 3 I

00:31:17  10  sentence you to 60 months in prison; that is consecutive

00:31:20  11  to Counts 1 and 2.  I have met both the mandatory

00:31:24  12  minimums with this sentence as well as the consecutive

00:31:28  13  requirements of the statutes identified at the outset of

00:31:31  14  this hearing.

00:31:32  15         Supervised release, I sentence you on Count

00:31:36  16  1 to three years; on Count 2 to three years; and on

00:31:41  17  Count 5 -- I am sorry, on Count 3 to five years; and

00:31:45  18  those will all be running concurrent to each other.  The

00:31:48  19  total amount on supervised release will be five years.

00:31:52  20         Restitution I order in the amount of

00:31:54  21  $1,446,810.91.  That is consistent with the document we

00:32:02  22  identified earlier that will be filed regarding

00:32:05  23  restitution and other conditions of supervised release.

00:32:08  24  I note that $1,000 of that total is payable to the

00:32:12  25  Islamic Center of Greater Toledo reflecting its

| | |
|---|---|
| 00:32:15 | 1 |
| 00:32:18 | 2 |
| 00:32:20 | 3 |
| 00:32:23 | 4 |
| 00:32:24 | 5 |
| 00:32:28 | 6 |
| 00:32:30 | 7 |
| 00:32:32 | 8 |
| 00:32:36 | 9 |
| 00:32:40 | 10 |
| 00:32:42 | 11 |
| 00:32:45 | 12 |
| 00:32:47 | 13 |
| 00:32:50 | 14 |
| 00:32:52 | 15 |
| 00:33:01 | 16 |
| 00:33:01 | 17 |
| 00:33:04 | 18 |
| 00:33:09 | 19 |
| 00:33:13 | 20 |
| 00:33:14 | 21 |
| 00:33:16 | 22 |
| 00:33:19 | 23 |
| 00:33:21 | 24 |
| 00:33:25 | 25 |

deductible; the balance is payable to the Westfield
Insurance Company.

I'm waiving the fine in this case finding
you do not have the ability to pay a fine.

I do order the special assessment of $300
due and payable immediately.

I will also order for the Bureau of Prisons
that you be assessed for mental health counseling and
also for drug and alcohol treatment as well.

Counsel, have you discussed with your client
a preference for location?

MR. THEBES:  Nearby where his mother lives,
which is --

THE COURT:  Thank you.  We will then put a
preference.  The mother lives where?

(Discussion had off the record.)

MR. THEBES:  Judge, if I may, I misspoke.
He would like to be near his son, which is -- his son
lives in Fort Wayne.  He said Milan would be a good spot
for him to be.

THE COURT:  What we'll do is we'll
preference a location as close as possible to Fort
Wayne, Indiana; and the Bureau of Prisons will make that
decision.  It is not mine.  I can only recommend.  But I
am happy to indicate that recommendation in my order.

```
00:33:29   1              Do counsel for either side know of any
00:33:31   2    reason not previously made why the sentence I have just
00:33:34   3    outlined should not be imposed?
00:33:35   4              MS. HOWE-GEBERS:  No, Your Honor.
00:33:36   5              MR. THEBES:  No, Your Honor.
00:33:37   6              THE COURT:  Any arguments that I failed to
00:33:39   7    address from either side?
00:33:44   8              MR. THEBES:  No, Your Honor.
00:33:45   9              MS. HOWE-GEBERS:  No, Your Honor.
00:33:51  10              THE COURT:  We're adjourned.
          11              (Concluded at 3:41 p.m.)
          12                        - - -
          13
          14              C E R T I F I C A T E
          15
          16       I certify that the foregoing is a correct transcript
          17    from the record of proceedings in the above-entitled
          18    matter.
          19
          20    /s/ Tracy L. McGurk                    ___8/23/16___
          21    Tracy L. McGurk, RMR, CRR                    Date
          22
          23
          24
          25
```